**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHALA HINDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-527-KEW |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Shala Hinds (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42

U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 25, 1961 and was 51 years old at the time of the ALJ's decision. Claimant completed her high school education and one year of college. Claimant has worked in the past as a caretaker, cashier, lab tech, and office manager. Claimant alleges an inability to work beginning October 11, 2006 due to limitations resulting from knee and leg problems post surgery.

**Procedural History**

On April 12, 2010, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 19, 2012, an administrative hearing was held before Administrative Law Judge ("ALJ") Richard J. Kallsnick by video with Claimant appearing in Tulsa, Oklahoma and the ALJ presiding in Muskogee, Oklahoma. By decision dated July 27, 2012, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on September 30, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with restrictions.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to perform a proper determination at steps 4 and 5; (2) failing to properly evaluate medical and non-medical source evidence; and (3)

failing to perform a proper credibility analysis.

## Step Four and Five Evaluation

In her decision, the ALJ found Claimant suffered from the severe impairments of a knee injury status post knee replacement, back injury status post surgery, seizure disorder, depression, and anxiety. (Tr. 15). The ALJ determined Claimant retained the RFC to perform light work except the ALJ found Claimant could climb stairs, stoop, crouch, crawl only occasionally. He also found Claimant should avoid climbing ladders, ropes, or scaffolds. Claimant was moderately impaired in her ability to work effectively with the public due to anxiety and depressed mood. Claimant was determined to be able to work with co-workers and supervisors on a superficial basis without being overly distracted by psychological symptoms. Claimant was able to adapt to changes in the work setting and make decisions regarding work tasks. Claimant was able to understand and carry out simple and some complex work tasks. Claimant was also found by the ALJ to be able to maintain concentration, persistence and pace for a normal workday and work week. (Tr. 17).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of housekeeper, bagger, and fruit cutter, all of which the expert testified existed in sufficient numbers nationally and regionally. (Tr. 23). The ALJ, therefore, concluded Claimant was not disabled. Id.

Claimant contends the ALJ should have included the additional restrictions of using a cane as an assistive device for ambulation and limiting Claimant to standing and walking for two hours a day in his hypothetical questioning of the vocational expert. No physician has ever prescribed a cane for Claimant nor restricted her in standing and walking to the extent urged by Claimant.

On June 3, 2010, Dr. Mohammed Quadeer conducted a consultative examination of Claimant. He noted Claimant's statement that she wears a brace on her left leg if she walks long distances and uses a cane to prevent falling on uneven ground. He also found Claimant's movements of the left knee were decreased. However, Dr. Quadeer also found Claimant's knees showed no effusion or edema and were stable in all range of motion exercises. Her great tow strength was equal bilaterally. Claimant's cervical and thoracic-lumbar spines were non-tender with full range of motion. Her lumbar-sacral spine had pain with decreased range of motion associated with tenderness to palpation and muscle spasms. Straight leg raising was negative. She was not able to do heel-walking or toe-walking.

Most importantly, Dr. Quadeer concluded that Claimant's gait was safe and stable without the brace on her left leg. However, she walked slowly with a limp and reported it was due to a fear of falling. He noted that she did not seem off balance or in jeopardy

6

of falling at any point in the testing. Once she put the brace back on, her gait was safe and stable and she was confident with normal speed. (Tr. 267-70).

On December 8, 2010, Dr. Sharon Dodd completed a Physical RFC Assessment form on Claimant. She concluded Claimant could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. She also found Claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds. (Tr. 311-18).

On May 3, 2011, Dr. Luther Woodcock completed a Physical RFC Assessment form on Claimant. He found Claimant could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. He also found Claimant could occasionally climb ramps and stairs, stoop, crouch, and crawl but never climb ladders, ropes, or scaffolds, balance, or kneel. (Tr. 465-72). Dr. Woodcock considered all of the previous reports including her report on activities of daily living and a report provided by Claimant's cousin which indicated Claimant was in pain with all activity and was limited by her previous surgeries. (Tr. 472).

7

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). However, "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) quoting Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). Other than Claimant's self-imposed use of a cane and brace, no medical professional has found that the use of assistive devices was required for Claimant to effectively ambulate. Moreover, the limitation to two hours of standing and walking per day has no foundation in fact or professional opinion. This Court finds no error in the failure of the ALJ to omit the additional limitations urged by Claimant in his hypothetical questioning of the vocational expert.

**Evaluation of Medical and Non-Medical Source Evidence and Evaluation of Claimant's Credibility in Light of the "Other Source" Evidence**

Claimant contends the ALJ failed to proceed through the

appropriate analysis to weigh the consultative medical opinion evidence. With regard to the opinions reflected above, the ALJ found they were due "great weight" particularly because of their consistency in reaching similar conclusions. (Tr. 21). Dr. Quadeer's, Dr. Dodd's and Dr. Woodstock's findings do not conflict with the ALJ's RFC determination nor significantly with one another's opinion. Claimant only suggests that the ALJ must proceed through the weighing process in a *pro forma* fashion, arguing form over substance. Where the evidence does not conflict with the ALJ's conclusions, the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened. <u>Howard v. Barnhart</u>, 379 F.3d 945, 947-48 (10th Cir. 2004). Claimant contends the ALJ must "give explicit reasons for rejecting the reports" while overlooking the fact the ALJ did not reject the report. Conspicuously missing from Claimant's arguments is any reference to other medical opinion evidence which conflicts with the findings and opinions of the consultative physicians. No error is attributed to the ALJ's findings on the medical opinion evidence.

Claimant also contends the ALJ failed to properly evaluate evidence from "other sources." Specifically, Claimant indicates the ALJ failed to consider the third party disability form completed by Claimant's cousin as well as her own disability form. "Information

9

from [ ] 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Soc. Sec. R. 06-03p.

In this instance, the ALJ failed to discuss the information provided by Claimant's cousin regarding the effect of her condition upon her activities of daily living. (Tr. 215-24). The problem with this failure is the effect it has upon the assessment of Claimant's credibility. Much of the cousin's information is supportive of Claimant's statements. It is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. With the decision completely devoid of any discussion of the supporting statement from Claimant's cousin, this Court is unable to evaluate whether the ALJ reviewed the statement or considered its content, particularly in assessing Claimant's credibility.

The ALJ should discuss this "other source" and fully explain

the weight given to the statements made in the opinion. Bowman v. Astrue, 512 F.3d 1270, 1275 (10th Cir. 2008). In order to evaluate and fully explain the weight given to Claimant's cousin's statement, the ALJ should utilize the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d). Additionally, on remand, the ALJ shall specifically state the bases for accepting or rejecting the statement on the extent of Claimant's limitations and the effect of doing so upon Claimant's credibility.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 30th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE